Your Honor, may I reserve five minutes for rebuttal? My name is Mary Ruth Mann. I represent the plaintiff appellants in this case. And this is a case about a very small workplace in Alaska where there is direct and circumstantial evidence of extreme racial discrimination, gender-based discrimination, and discrimination based on union affiliation. And it's gone on since 1985 under the same manager. The appellants complained to Seattle Management. This Juneau station was directly overseen by Seattle Management. And their grievances were first ignored and then withdrawn in an agreement with the district union, which is separate from the local union in Alaska. Allegations of a hostile work environment can go back that far under state and federal law, under continuing violation law, under the state laws, and under the new case McGinnis and Morgan, McGinnis v. GTE, and National Railroad Passenger Association v. Morgan under federal law. And so there's no question that the evidence going back, at least in the 90s, could have been considered by the court. It is clear in this case that the court had a different view of how this case should be pled. Judge Lasnik did not appreciate a lump-sum treatment of the evidence, a pattern-in-practice-type discussion of the evidence, or a treatment of the entire work environment as impacting each one of these plaintiffs. But this was a small workplace, and the plaintiffs were clear that they were very greatly impacted by the treatment of their co-workers. There are several errors with respect to the trial court's legal treatment. Sotomayor, as you understand it, what is the critical district court holding? Well, I've been asked to argue both sets of holdings in this argument, and I'm spending time on my client's case again, as I think I must. The critical holdings, I guess, there are several. One was statute of limitations. One was Railway Labor Act exclusion, which the law does not support. One was that you couldn't establish a continuing violation based on this evidence to get the evidence over the statute of limitations. And one was that there was res judicata by the district IAM's conduct in wiping out, supposedly wiping out these same issues, which could not happen. The IAM could not have done that to the discrimination claims, much less the grievances, which they simply abandoned. But I think Judge Lasnik did not see that the plaintiffs did not have to be the target of each piece of evidence in order for that evidence to create a hostile work environment around them. I think that he did not see that racial statements and workplace evidence did not have to be proximate in time. He also did not allow the evidence that the court rules say is allowed on a summary judgment, which is the interrogatory answers themselves. And then on reconsideration did not allow the declarations incorporating that evidence to be considered. This was an extremely difficult case for plaintiff. Apparently, from Judge Lasnik's comments, he felt that counsel, rather than presenting legitimate needs for extensions of time based on extreme dumping of motions on our office by the defendants, was, as he says, railing and complaining about her work schedule. Well, I think the Court can look at the declaration of Judith Longquist, the declaration of Scott Blankenship, and the declaration of Steve Teller in the sanctions portion of this record to know that that lawyer that Judge Lasnik spoke about for 25 years has been able to stand you, a plaintiff's practice is precarious and that the defendants can, in such cases, overwhelm plaintiff's attorneys and plaintiff's practices. It is crucial that the Court, in looking at the 13 plaintiffs in Alaska, provide a playing field which can never be leveled. I think Judge Lasnik spoke an unwitting truth when he said that it was counsel's obligation to create any equality of resources in order to take on Alaska Airlines. Well, plaintiffs can never do that, but the playing field is appropriate. The empire does not pile on after the inappropriate piling on has happened, rather starts pulling things off in order to get the ball back and get it back in play. Kennedy. Can I ask you exactly what issue you're addressing now? Thank you, Judge Tsushima. I'm addressing the combination of issues which I think are not separable. One is that the plaintiffs did not have an opportunity to fully put their case in front of Judge Lasnik because of rulings. The other is that Judge Lasnik's view of counsel inappropriately colored the decision on sanctions. The record on sanctions is clear that there is no established cost of any of counsel's conduct in pursuing this case. What is not before you is the motion that Alaska Airlines filed to get fees from the clients, which Judge Lasnik denied after finally requiring them to come up with some discovery as to what time they were claiming and what it was spent on. And he found that, for example, with the EEOC filing, which he originally had thought was inappropriate and must have cost a lot of money to respond to, that it, in fact, cost no money to respond to because the EEOC allegation completely overlaps the allegations that went forward in the case, that he found did have debatable merit. Which EEOC filings are you talking about? The defendant alleged, and the only area where Judge Lasnik found that the clients might be liable for fees was the fact that we had filed the EEOC titles, or the Title VII claim, without perfecting an EEOC filing. So your clients did not exhaust their remedies before the EEOC? Correct. And this is purely a State law case. The originally — I'm sorry. I thought your cause of action was under Title VII in the ADA. No, Your Honor. Originally, Title VII was mentioned in the pleadings. It was abandoned in the summary judgment submissions. What Judge Lasnik found in dealing with — Was your ADA claim abandoned as well? We never pursued a claim under the Federal ADA. It was under the — What's your basis for subject matter jurisdiction in the court? We don't think there was subject matter jurisdiction, Your Honor, and we've said that in the briefing. Originally, it was removed based on the fact that we had mentioned Title VII. That was abandoned. We proceeded — Was it abandoned before it was removed? No, it was — No, it was abandoned after it was removed. And it was not pursued in summary judgment. It was not pursued in discovery. Judge Lasnik has found, with respect to the decision about charging fees to the clients, not charging them any, which he did not, that there was no cost to Alaska Airlines of mentioning the EEOC Title VII claim in the pleadings. Was the issue of subject matter jurisdiction ever brought up expressly before Judge Lasnik, and did he make a ruling on that, either on a motion to remand or something like that? My recollection is that it was brought up, but I can't cite you to the record, Your Honor. Well, what is — what is important in this case is that the clients have been left behind. The — the appellants working in an incredibly hostile work environment have never had a say in the court. No, that goes to the parents. It does. And you've cited some declarations that it's hard to bring these actions.  What went wrong here? Do you — I don't see — I don't see your brief saying that these were all State claims and that, therefore, the removal was improper. I don't see that briefed. We mention only in the jurisdictional statement that we have never agreed that there was subject matter jurisdiction. That — and the citations are in the — Did you ever ask for remand? Your Honor, at this point, I cannot cite you to the record of that. My recollection is that we did. That would have been our pattern, but I cannot — I can't cite you to the record on that. Well, okay. That — because that's not very helpful. I mean, most complaints that say that we're complaining about discrimination and about unfair — discriminatory work environments are — in suing an airline are usually capable of being interpreted as Title VII Federal law complaints or Railway Labor Act or something. Correct. We — the defense — there was a defense of the Railway Labor Act here, but we disagree that that is a basis for subject matter jurisdiction as well. And these — this was briefed in the summary judgments that — but I can't cite you to us moving to remand without looking back at the record. I don't recall. Why isn't that a basis for your appeal? The — Wouldn't that completely undermine Judge Lassnick's jurisdiction? It would, Your Honor. And I probably have not effectively raised it. There are so many issues in this case in terms of how the case was treated. It doesn't look like it's been preserved in the district court, either. I believe that it has been in the briefings, but I can — again, that is not what I prepared to talk about today and compare us to do. What do you want us to do? The options are to remand it for consideration on the merits for a trial. But if Judge Lassnick doesn't have jurisdiction. Your Honor, in the event that you agree with us that there is not subject matter jurisdiction, then it should be remanded. For what? Remanded where? To the state court? You never asked Judge Lassnick to remand it. It looks on its face that there are claims pled that are Federal law-affirmed. That's what Judge Lassnick thought. Didn't he? He did up until the summary judgments when those were clearly abandoned. I think that that is probably accurate. If you do — Perhaps it should be remanded for consideration of the subject matter jurisdiction issue as well as the other. Well, there's supplemental jurisdiction of State law claims if the case is preceded to summary judgment and there have been assignments on the merits. That's correct. There's some discretion there. He could retain jurisdiction or not. Which he did. Yeah, he did. Your Honor, I — We've almost used your time, so we'll let you have five minutes on rebuttal. Thank you. Good morning, Your — excuse me. Good morning, Your Honors. My name is Jillian Barron, and I represent Alaska Airlines and Gerald Kvasnikoff. I'm going to refer to them both as Alaska, and I will refer to the appellants as plaintiffs. I'd like to just address a couple of issues brought up by Ms. Mann to begin with. There was never a motion for remand in this case, and Ms. Mann did cite in her discovery responses for the plaintiffs that they were making claims under Title VII. So I don't think there's any question that there is jurisdiction in this case. If the claims weren't exhausted before the EEOC, does the district court have power to retain the case? I believe that as long as a claim was properly asserted to — or was asserted to start with. There were also claims of — Asserted before, what, the court or the EEOC? Claims asserted under Federal law. Before what forum? Excuse me? Before what forum? In the initial complaint, there were claims — Are you saying there's no requirement of administrative exhaustion before the EEOC? No. There is a requirement of that, and that was the reason that in the long run, the Title VII claims were all dismissed. Isn't that a jurisdictional requirement? It is. Well, I believe that the courts have held it's kind of a quasi-jurisdictional We've used the phrase subject matter jurisdiction, but clearly the district court — it seems to me the district court has subject matter jurisdiction if there's a Title VII claim to look to see whether there is a defense of exhaustion. I believe that that is the case. That's the way it's normally phrased. We've used some funny language. Yeah, and there's circumstances in which the failure to file an EEOC complaint might be waived, but that's not the case here. So — What was the basis of the dismissal of the EEOC claims by Judge Leibniz? That there was no exhaustion before any administrative agencies. And therefore? And therefore, there was no basis to hear — No basis means the district court had no jurisdiction. No. Well, whether you say there's no jurisdiction or whether you say that they failed to exhaust, and so therefore he dismissed. It was based on failure to exhaust. What about the plaintiff's position that, well, they never raised a Federal discrimination claim in their complaint expressly, right? A Federal? I'm sorry, I didn't hear you. Federal discrimination complaint, as opposed to under State law. Well, if you take a look at the complaint, and I don't have it before me, but it's in our supplemental excerpts of record, and I believe it's — the original complaint and the amended complaint are both at the beginning of our supplemental excerpts. There are claims of violations of Federal law, and there's reference — Unspecified Federal law, right? Excuse me? Unspecified. Unspecified, yes. But, Your Honor, I believe that as — basically, Ms. Mann has admitted in her various proceedings that there was a Title VII claim. And if you look at the plaintiff's discovery responses, which are in her excerpts of record, every one of them refers to Title VII. So that was the understanding that there was. I understand her argument here, that after the — when there was a motion for summary judgment, that they were abandoned. Yes. Was that issue ever expressly decided by Judge Lasnik? Which issue? Of whether there were Federal discrimination claims or not? It was decided that there was no basis to address any Federal — Because of the — Because of the lack of exhaustion. Exhaustion. And you pointed out, I take it, that there was a failure to exhaust. Yes. You presented it as a defense. That was presented in each one. Okay. So if the State claims, then I'll stay in under supplemental jurisdiction? Yes. Your Honor, I've never understood this appeal to really be based on the jurisdictional issue, and I'd like to address some of the other issues, if I may. Ms. Mann has repeated to you her general allegations that she's made throughout this case about a broad array of conduct that the plaintiff's claim constituted discrimination, retaliation, and wrongful discharge based on things like gender, race, and union status. But Ms. Mann's arguments are not evidence, and they can't make up for the fact that the plaintiffs did not defend their claims and did not identify admissible evidence to the trial court that could support their claims. Further, Ms. Mann's argument today and in her briefs does not demonstrate that any specific claim of any specific plaintiff is viable. The plaintiffs have not shown that summary judgment was improperly granted. Now, in Alaska's original motions for summary judgment, the company set forth in trial for Ms. Mann's pleadings for each plaintiff. They set forth a law on those claims, the required elements, and the undisputed facts which were based on the plaintiff's own depositions, showing that there was no issue, excuse me, no issue for trial. The plaintiffs did nothing in their responses to analyze those claims. They did nothing to point out the specific evidence that they believe supported those claims. Instead, they put in lengthy factual statements, again, Ms. Mann's arguments essentially, saying that they had been wronged, but they failed to provide any specific sites to evidence in the record. And Judge Lasnik issued an order specifically stating that that would not be sufficient because Ms. Mann submitted 284 pages for each plaintiff, just a mass of interrogatories, and all she cited to as support for her statements was answers to interrogatories. And the court said that it was not going to try to leaf through all those pages and find what it might need to support her statements. Ms. Mann refused to do that. She was given an opportunity to add the citations, but she did not. And she did that again and again in her succeeding motions. Ms. Mann has tried to make an argument today, but the problem was that she didn't have enough time. Well, she made a motion for more time on the first couple of motions for summary judgment. She has not properly appealed that, the denial of that motion here. She has not shown that the district court abused its discretion. At the time, the court concluded she had shown no reason why she could not respond on time to the first two motions for summary judgment. She did file responses. She did file factual statements, but she provided effectively no legal support and no analysis of how the facts that she alleged supported the claims of that particular plaintiff. It seems to me, making the her, some of her submissions seem to be making the point that it's very hard for plaintiffs to make out Title VII cases, to prove them because they're little people. And I suppose that's true. Did Judge Lasnik address that at all? Well, I don't think Ms. Mann made that point in her submissions. There isn't a declaration. No, there's no declaration to that effect. I'm sorry. Maybe I misunderstood. The declarations refer to the difficulty plaintiffs have in proving Title VII cases. Okay. Well, those, first of all, those declarations. I'm not sure what you make of that. Yeah. I don't make anything of that. First of all, those declarations were submitted in Ms. Mann's motion for reconsideration of the sanctions. They were not presented at the time to the judge. And the other thing is Ms. Mann is a very experienced lawyer. She's cited to you herself in some of the declarations in the file numerous big matters that she's handled against the state, various counties. Title VII is making a prima facie case is actually fairly easy if there's evidence that the plaintiff was treated differently than others. All she needed to prove was that the plaintiff was submitted to some kind of adverse action, that they were doing their work properly, and that there was a person not in the protected status that was treated differently. Ms. Mann failed to make even that basic prima facie case. She failed to even argue it. And we did in our response brief, just to give you an example of the lack of evidence to support those race discrimination claims that she's asserted. And that is one of the only four claims that Ms. Mann has actually identified in her appeal as having been wrongly dismissed. And as we showed, each of the individuals who she says were subjected to some kind of racial discrimination, the actions that they complained of occurred, all of them well before 1997, which would be even under Washington law, which is the more generous here with a three-year statute of limitations. All of them were well before that. Just let me ask you one question. I don't think we need to belabor this, but your motion for summary judgment was based on the you asserted the failure to exhaust administrative remedies. Is that basically what it was? What were the grounds for your motion? Well, there were 12 different actions. There was one motion for each plaintiff. And they're extensive, because the complaint had ten causes of action. And then there was a different ground for it.  Just explain the basis for your motion a little bit. Well, each motion was different based on the evidence that had come forth in the plaintiff's depositions. So, for example, with Ms. Saldivar, who was one of the individuals claiming race discrimination, it showed that she had been dismissed back in 1996, so there was a statute of limitations issue. She had not exhausted remedies, so there was no Title VII claim. There was no evidence that the reason for the discharge, and the reason for the discharge was explained in the motion. She failed to perform and to pass tests that she was required to do. There was a showing of a legitimate reason for her termination, and it was pointed out that she had shown no evidence of pretext. So there was a full analysis of that. And that was for each plaintiff. If there was either a race discrimination claim or a gender discrimination claim, the motions went through the full analysis and pointed out the lack of evidence to support those claims. Did you just spend a couple minutes on the sanction order? Yes. The sanction order was based on two, I'd say two aspects of Ms. Mann's motion. First, you asked for quite a bit more, didn't you, by the way? Alaska asked for, well, actually, it did not ask for more. What it did, and if you, I believe we have our motion in our supplemental, I'm sure we have our motion in the supplemental excerpts of record. I don't know where it is offhand, but what Alaska said is we have spent approximately, I think it was $500,000. I don't remember the exact number, and asked the court to find what was appropriate. It did not say give us $500,000. And I would note that in its motion for sanctions, and Alaska submitted a declaration of Phil Thompson, who was the primary attorney at that time representing Alaska, indicating that Alaska was not asking for more than $500,000. It was not asking for the fees it had expended to respond to Ms. Mann's motion for extra time on which the court had earlier awarded sanctions. In other words, it wasn't asking to double dip. It excluded anything for which it had previously received fees from the court. And it did not include that in our record, because in Ms. Mann's opening brief on the sanctions, she did not refer to anything that would have required us to produce that. But the two issues that the court found, two sort of general areas that the court found warranted sanctions were that Ms. Mann had knowingly pursued frivolous claims, or claims that had no merit, beyond the point that Ms. Mann had made where it was clear that there was no support for those claims. And the court's order cited a number of those issues, the Title VII claims, the claim of Mr. Jenkins for disability, a failure to accommodate. Mr. Jenkins' own deposition testimony established that he had no medical need for accommodation. He never asked for accommodation. And he was never prevented from working because of his asthma, which was his alleged disability. Ms. Mann simply ignored that evidence and proceeded to argue his disability claim, and the court found that that was improper. The court also found that a number of the claims for retaliation, for having opposed discrimination, race discrimination, or health and safety issues, had no support in the record, and that there was no evidence from, at the time that the plaintiffs had submitted their discovery responses, that they could support those claims, yet Ms. Mann's assertion that those things required Alaska to go ahead and file motions for summary judgment. Now, Ms. Mann has said that the Title VII claims didn't cause any extra expense, but the order that she's referring to is the district court's order on the plaintiffs, on the request for fee against the plaintiffs, and the court ultimately concluded that the only basis for those, the claim for fees there was under federal law, Title VII, and that because we could, that it could not sufficiently see which costs were allocated to the Title VII claims, it was not going to grant those fees. That is not applicable to the fees against Ms. Mann, because in the case of Ms. Mann, the court was looking at a whole set of conduct that occurred throughout the action, the pursuit of claims that were frivolous, and then the second category that I didn't mention is engaging in litigation tactics that obscured the nature of the claims and made it more difficult for Alaska to get rid of them, and that included things like in her discovery responses, she continued to list every single claim that was in the complaint for every plaintiff, and as a result of that, Alaska had to go ahead and move for summary judgment. Sotomayor, what is the amount of the sanctions? There were just over $39,000. $39,000. I believe that in her briefs and statements Ms. Mann. And the way the court ended up calculating the fees was, first of all, it reduced the full $500,000 by a third. It found that that third was perhaps overworking, because it's a big firm. There were a number of people involved. So it reduced the fees to start with, and then it took 10 percent of those, which it found to be a very conservative estimate of the extra work that Alaska had to go through as a result of Ms. Mann's conduct. And I believe if you take a look at the appeal, it really just confirms Ms. Mann's method has continued through the appeal. She's continued to provide many factual statements with no citations. She's continued to cite to whole documents. Like if you take a look at some of her citations, they're for her own declaration. That includes, again, the fact that she's not been charged with any of the charges. And then she's continued to cite to her own declaration the full set of 12 interrogatories. Your Honors, although Ms. Mann can be faulted on many of the aspects of how she's handled this action, there is no basis to conclude that her clients have any legitimate claims that she failed to preserve. There is no evidence that she has presented or analysis that she has presented in the trial. To the contrary, Ms. Mann's error was in knowingly and recklessly continuing to pursue claims that clearly lacked merit. And we ask that the Court deny both the plaintiff's appeals and Ms. Mann's appeals and affirm the district court. Thank you. Judge Lasnik ruled on the sanctions motion, refusing counsel's request for more detailed information about the attorney's fees. He, on the client's, the plaintiff's sanctions, went on to say that the attorney's fees were not sufficient and that they had been granted that and went into further proceedings. He denied counsel a separate amount of time for responding to the fee claim against counsel, which was for $500,000 or what part of that the court would award, while counsel was having to spend time defending the clients against a claim for $600,000 in fees. These were extreme and unprecedented kinds of claims. And counsel specifically asked the court for a separate allotment of time to defend herself. That was not granted, no extension of time. And so the content of counsel's response on her behalf is in the motion for reconsideration, which was then disposed of by the court saying, well, there's nothing here that counsel could not have submitted in the first place. But that was a grossly unfair treatment of counsel and the plaintiffs in that case. The defense of the plaintiffs was successful on those fees. And the defense of counsel could have been successful with the same treatment of getting the detailed information about the fees and being able to submit information. There was a conflict of interest there that put counsel in an untenable position. With respect to Mr. Jenkins, Ms. Longquist's declaration makes it clear there was a conflict between deposition testimony and the interrogatory testimony. The interrogatory testimony that was signed by Mr. Jenkins supported a claim. The deposition testimony called it into question. The plaintiffs asked the court to require Alaska to provide the deposition transcripts so that counter-designations could be made. If you go to court and someone uses a deposition, you've got to file the whole thing, and then counter-designations can be made and cross-exam can be done from it. In this case, the plaintiffs at that point did not have funds to order their own depositions. Longquist tells you in declaration that's not unusual. And the court did not require that we be able to see the depositions to counter-designate. So there is substantial evidence and response that the court has never seen. The treatment of the discovery, counsel is saying, is one of the things that is subject of sanctions. The discovery answers did, in fact, allege that all the plaintiffs were affected by all the violations against the other clients. It's a hostile work environment claim. The conduct doesn't have to be targeted against you for you to be impacted by it. The retaliation, if it chills your rights, is actionable also potentially by you. So that was the theory that Judge Lasnik did not see. When he ordered us to separate out what was specific, targeted at each person, we did that. But we certainly didn't have an obligation to cast our case that way from the get-go. And that's part of what Alaska Airlines is saying is sanctionable, is that we presented for each person the whole environment of evidence. In summary judgment, the information about each plaintiff is supported by the court's judgment, by the record that we gave, even though it was – I was in a trial and my staff was doing the best they could to present this evidence and get it into the case. And let me just tell you a couple of these so you have an example. Mila Saldivar was Filipino. She was qualified. She was mocked for her accent and had to be transferred from one workgroup to another. She was then terminated on basis which she alleges was unfair in that it was alleged that she didn't pass her training, but she had a letter from her supervisor saying she was performing satisfactorily. She was threatened that she would be terminated on the spot if she brought Chris Monigal, a union rep, to a meeting with her, and she was terminated. She filed eight applications to get back into Alaska Airlines after that and was told by an Alaska Airlines manager she was banned for life from Alaska Airlines. There were comments in the workplace supported by other workers that were racial slurs against Filipinos that were reported to management and not acted on. That is a prima facie case both of a hostile work environment and of disparate treatment against Ms. Saldivar. Kagan. Citations to the record in the contentions that you're making now in your brief? They are. With each plaintiff, there is a similar case. Brian Dallas was a union president from 1999 to 2001, well within the statute of limitations. He had 12 confrontations with Kvasnikoff about race discrimination and he wrote to the company in Seattle about race discrimination. Ms. Mann. This is in your briefs and your time has expired. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar this morning. The Court stands adjourned. All rise. The Court is in session. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. Stand adjourned. stand adjourned all right all right conference all right conference all right uh... uh... uh... uh... uh... uh... uh... uh...
judges: Schroeder, Tashima, Bybee